## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

EDWARD TYRONE RIDLEY,    :
    :
      Plaintiff,    :
VS.    :    NO. 5:22-CV-00229-MTT-CHW
    :
TARRA JACKSON, *et al.*,    :
    :
      Defendants.    :
_____  :

## ORDER AND RECOMMENDATION

Plaintiff Edward Tyrone Ridley, a prisoner currently incarcerated at the Washington State Prison in Davisboro, Georgia, has filed a *pro se* complaint seeking relief under 42 U.S.C. § 1983 (ECF No. 1), an affidavit in support thereof (ECF No. 5), and a motion for leave to submit grievance responses (ECF No. 6). Plaintiff also seeks leave to proceed *in forma pauperis* in this action (ECF No. 2). For the following reasons, Plaintiff's motion to submit his grievance responses is **GRANTED**, but it is **RECOMMENDED** Plaintiff's motion for leave to proceed *in forma pauperis* be **DENIED** and that his claims be **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(g) and/or 28 U.S.C. § 1915A.

### I.    Dismissal Pursuant to 28 U.S.C. § 1915(g)

Federal law bars a prisoner from bringing a civil action in federal court *in forma pauperis*

> if [he] has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state

a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). This is known as the "three strikes provision." Under § 1915(g), a prisoner incurs a "strike" any time he has a federal lawsuit or appeal dismissed on the grounds that it is frivolous or malicious or fails to state a claim. *See Medberry v. Butler*, 185 F.3d 1189, 1192 (11th Cir. 1999). Once a prisoner incurs three strikes, his ability to proceed *in forma pauperis* in federal court is greatly limited: leave to proceed *in forma pauperis* may not be granted unless the prisoner is under imminent danger of serious physical injury. *Id.*

A review of court records on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") database reveals that more than three of Plaintiff's federal actions or appeals have been dismissed as frivolous, malicious, or for failure to state a claim. *See, e.g.,* Order Dismissing Compl., *Ridley v. Rhines*, ECF No. 83 in Case No. 4:97-cv-00301-RH (N.D. Fla. Feb. 24, 1998) (adopting recommendation to dismiss for failure to exhaust);[1] Order Dismissing Compl., *Ridley v. King*, ECF No. 5 in Case No. 1:96-cv-00231-WLS (M.D. Ga. Jan. 2, 1997) (dismissed as frivolous); Order Dismissing Compl., Order Dismissing Compl., *Ridley v. Rister*, ECF No. 19 in Case No. 5:96-cv-00435-RH

---

[1] A civil action which is dismissed for failure to exhaust administrative remedies counts as a strike for purposes of 28 U.S.C. § 1915(g). *See White v. Lemma*, 947 F.3d 1373, 1379–80 (11th Cir. 2020) (finding that failure to exhaust administrative remedies counts as a strike under Eleventh Circuit precedent); *Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998) ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.") *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

2

(N.D. Fla. Oct. 2, 1997) (adopting recommendation to dismiss as frivolous); *see also* Order Dismissing Compl., *Ridley v. Warren*, ECF No. 5 in Case No. 1:19-cv-04664-JPB (N.D. Ga. Nov. 18, 2019) (adopting recommendation to dismiss based on § 1915(g)). Plaintiff is accordingly barred from prosecuting this action *in forma pauperis* unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

To qualify for the "imminent danger" exception, a prisoner must allege specific facts that describe an "ongoing serious physical injury," or "a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Sutton v. Dist. Attorney's Office*, 334 F. App'x 278, 279 (11th Cir. 2009) (per curiam) (internal quotation marks omitted). Complaints of past injuries are not sufficient. *See Medberry*, 185 F.3d at 1193. Vague and unsupported claims of possible dangers likewise do not suffice. *See White v. State of Colo.*, 157 F.3d 1226, 1231 (10th Cir. 1998). The exception to § 1915(g) is to be applied only in "genuine emergencies," when (1) "time is pressing," (2) the "threat or prison condition is real and proximate," and (3) the "potential consequence is serious physical injury." *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002).

Plaintiff's Complaint raises claims concerning his recent incarceration at the Washington State Prison ("WSP"), beginning in March of 2022. Compl. 6, ECF No. 1. According to Plaintiff, another inmate named Larry Jones repeatedly threatened to harm Plaintiff and other inmates at the prison. *Id.* More specifically, Plaintiff alleges that he complained to Defendants Jackson and Wilkes that (1) inmate Jones threatened to harm or kill other inmates at the prison; (2) inmate Jones threatened to kill Plaintiff; and (3) inmate Jones told other prisoners that Plaintiff is "in prison for child molestation of some (4) four

3

year old child," which Plaintiff says is untrue.  Compl. 6-7, ECF No. 1.[2]  Plaintiff also states that prison staff know that (1) inmate Jones is not properly classified and should be in a "level five" facility and (2) inmates who have been improperly classified have injured or killed other prisoners.  *Id.* at 8.  Plaintiff further alleges that after he spoke with Defendant Jackson about this issue, he was moved to a top bunk on the top range even though he had a medical profile that should have prohibited such placement.  *Id.* at 6-7.  He also claims that he is in "immediate danger while housed at any prison in this state on a technical probation violation" because he is housed with other inmates who have been convicted of more serious crimes and because there have been "stabbings," "killings," and "beatings" in the jails.  *Id.* at 2.

Shortly after he filed the Complaint in this case Plaintiff was transferred from Washington State Prison, and he is now housed at another facility.  It is unclear whether this transfer affects the imminent danger analysis.  *Compare Smith v. Dewberry*, 741 F. App'x 683, 687 (11th Cir. 2018) (per curiam) (holding that "transfer does not affect [the] imminent danger analysis, as that analysis focuses on whether [Plaintiff] alleged an imminent danger at the time his complaint was filed") *with Owens v. Schwartz*, 519 F. App'x. 992, 994 (11th Cir. 2013) (per curiam) (holding that "even if [prisoner] had been in imminent danger of serious physical injury from his cell mate and the failure of prison

_____

[2] It appears from the Complaint that Plaintiff complained directly to Defendant Jackson, the Deputy Warden of Care and Treatment, and that she notarized an affidavit concerning his complaints about inmate Jones.  Compl. 6, ECF No. 1.  Defendant Wilkes is the warden of the prison, and an individual designated as the warden signed Plaintiff's grievances, which are attached to the Complaint.  Attach. 2 to Compl. 1-2, ECF No. 1-2.

officials to protect him, that danger had passed" when he was transferred after he filed his complaint, and "[a]n allegation of past imminent danger will not invoke the 'imminent danger' exception").  But even if the transfer to another prison does not undermine his contention that he was in imminent danger at the time he filed his Complaint, his submissions to the Court demonstrate that he cannot take advantage of the § 1915(g) exception.

First, to the extent Plaintiff alleges he was in imminent danger because inmate Jones threatened him, Plaintiff's submissions indicate that he "made a PREA allegation through JPay Services on 6/5/2022 and was removed from E-2 dormitory by Deputy Warden Jackson until his PREA allegation could be thoroughly investigated by the SART investigator."  Attach. 1 to Mot. for Leave to Submit Grievance Responses 1, ECF No. 6-1.  Other submissions demonstrate that Plaintiff was in administrative segregation on June 7, 2022—one day before he filed the complaint in this action.  Compl. 9, ECF No. 1 (signed June 8, 2022); Attach. 3 to Compl. 1, ECF No. 1-3 (administrative segregation assignment appeal form dated June 7, 2022 stating that Plaintiff was to "Remain in Administrative segregation" pending investigation).  It is thus clear that when Plaintiff complained about his safety, he was removed from the allegedly dangerous situation and placed in segregation.

Plaintiff also appears to allege that the conditions at WSP are particularly dangerous because Defendants do not properly classify inmates when they arrive at the prison.  Compl. 7, ECF No. 1.  The fact that Plaintiff was in administrative segregation at the time he filed his Complaint in this action shows that he could not have been exposed to any

improperly classified inmates who could have placed him in imminent danger of serious physical injury at that time.

Plaintiff also filed an affidavit in which he states that he was robbed of his nitroglycerin at knifepoint while he was awaiting transfer out of WSP.  Aff. 1, ECF No. 5.  This allegation also fails to support Plaintiff's claims that he was in imminent danger of serious physical injury at the time he filed his Complaint.  This single instance of violence, after which Plaintiff was immediately transferred to a different prison, is insufficient to show that Plaintiff should be able to take advantage of the § 1915(g) exception.

Plaintiff next alleges that he was reassigned to a top bunk on the top range even though he had a medical profile that should have prevented such placement.  But Plaintiff fails to allege any factual details about his medical needs that could show that his reassignment to a top bunk on the top range placed him in imminent danger of serious physical injury.  This allegation likewise fails to show that Plaintiff should be permitted to proceed *in forma pauperis* in this action.

Finally, any remaining claims, including Plaintiff's allegations that Defendants have prohibited him from accessing the prison's law library or have improperly calculated his sentence, do not in any way demonstrate that Plaintiff was in imminent danger of serious physical injury.  For these reasons, Plaintiff should not be permitted to proceed without prepayment of the filing fee and his Complaint should be dismissed without prejudice to his right to refile with pre-payment of the full $402.00 filing fee.  *See Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002) (per curiam) ("[T]he proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave

6

to proceed *in forma pauperis* pursuant to the three strikes provision of § 1915(g)."); *White v. Lemma*, 947 F.3d 1373, 1379 n.6 (11th Cir. 2020) (noting that while "a court can dismiss a case on the merits even when the prisoner has three strikes and fails to pay the filing fee, the court cannot let a case proceed on those facts").

## II.   Dismissal Pursuant to 28 U.S.C. § 1915A

### A. Standard of Review

Dismissal of this action is also appropriate pursuant to provisions of the Prison Litigation Reform Act ("PLRA").  Under the PLRA, the district courts are obligated to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee.  *See* 28 U.S.C. § 1915A(a).  When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true.  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).  *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Id.* (internal quotation marks omitted).  Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted).  The Court may dismiss claims that are based on "indisputably meritless legal" theories and

"claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

B. Factual Allegations

As discussed above, Plaintiff alleges that inmate Larry Jones repeatedly threatened to harm Plaintiff and other inmates at the prison. *Id.* Plaintiff states that when he complained to Defendant Jackson—the Deputy Warden of Care and Treatment—he was

8

moved to a top bunk on the top range even though he had a medical profile that should have prohibited such placement. *Id.* at 6-7. Plaintiff also appears to allege that the conditions at WSP are particularly dangerous because Defendants do not properly classify inmates when they arrive to the prison. *Id.* at 7. Plaintiff further contends that unspecified individuals have refused to allow him to go to the law library or "give out supplies and research materials to do research." *Id.* at 8. Plaintiff thus contends Defendant Jackson, WSP Warden Wilkes, and Georgia Department of Corrections Commissioner Timothy Ward have violated his constitutional rights, and he seeks injunctive relief and compensatory damages as a result. *Id.* at 9.

C.  Plaintiff's Claims

*1.  Claims against Defendant Ward*

Plaintiff lists Defendant Ward in the caption of this action, but he has not alleged that Defendant Ward personally participated in any of the alleged constitutional violations in this case. As such, it appears Plaintiff seeks to hold Defendant Ward responsible for the actions of his subordinates. It is well-settled in the Eleventh Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Rather, a supervisor who does not personally participate in unlawful conduct can only be held liable under § 1983 if there is a causal connection between their actions and the alleged constitutional violation. *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam). A causal connection can be established if

9

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (internal quotation marks omitted).

In this case, Plaintiff has not alleged any facts suggesting the existence of a widespread history of abuse at the prison, that Defendant Ward had a custom or policy that led to the alleged constitutional violations in this case, or that he directed his subordinates to act unlawfully or knew they would do so and failed to stop them.  Absent specific facts that could support his allegations of supervisory liability, Plaintiff cannot state an actionable claim.  *Ashcroft*, 556 U.S. at 678.  Plaintiff's supervisory liability claims against Defendant Ward should therefore be dismissed.

### 2. *Deliberate Indifference to Safety Claims*

Plaintiff's allegations also give rise to claims that Defendants Wilkes and Jackson were deliberately indifferent to his safety at Washington State Prison.  This type of claim is generally cognizable under the Eighth Amendment to the United States Constitution.  *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prisoner asserting an Eighth Amendment deliberate indifference to safety claim must allege (1) a substantial risk of serious harm; (2) the prison officials' deliberate indifference to that risk; and (3) causation.  *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).  To establish deliberate indifference in this context, a prisoner must show that prison officials subjectively knew of

the substantial risk of serious harm and that the prison officials knowingly or recklessly disregarded that risk.  *Id.* at 1332.

As previously explained, Plaintiff states that he complained to Defendants Jackson and Wilkes about the threats inmate Jones was making and that prison staff knew inmate Jones was improperly classified.  Even if these allegations were sufficient to show that Defendants knew inmate Jones posed a substantial risk of serious harm to Plaintiff, the documents filed by Plaintiff demonstrate that Defendants were not deliberately indifferent to such risk.  Shortly after filing his grievances, Plaintiff was removed from his dormitory and placed in segregation pending their investigation, and he does not allege the threat to his safety continued once Defendants placed him in segregation.  Attach. 1 to Mot. for Leave to Submit Grievance Responses 1, ECF No. 6-1; *see also* Attach. 3 to Compl. 1, ECF No. 1-3.  Plaintiff has therefore failed to state a claim that Defendants Wilkes and Jackson were deliberately indifferent to his safety, and any such claims should be dismissed.

It is unclear whether Plaintiff seeks to raise a claim based on the incident where other inmates stole his nitroglycerin.  Aff. 1, ECF No. 5.  To the extent that he does, however, he has failed to plead facts clearly associating any named Defendant with this alleged constitutional violation.  These claims may be dismissed on that ground alone. *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation).  Plaintiff additionally requests "criminal felony charges filed on these offenders ASAP" and an "investigation."  Aff. 1, ECF No. 5.  But the United States

District Courts have no authority to order state or federal law enforcement agencies or prosecutors to initiate investigations or prosecutions. *Otero v. U.S. Attorney Gen.*, 832 F.2d 141, 141 (11th Cir. 1987).  Plaintiff, a private citizen, likewise has no power to originate criminal pleadings on his own initiative. *Id.*  Thus, even if Plaintiff were attempting to raise a claim concerning this incident, this Court could not provide him with the requested relief.  These claims should also be dismissed without prejudice.

### 3. Retaliation Claims

Plaintiff next suggests that he was reassigned to a top bunk on the top range in retaliation for filing grievances about inmate Jones. Compl. 6-7, ECF No. 1.  It is well-established that an adverse action imposed in retaliation for a prisoner's exercise of a constitutionally protected right is actionable. *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (per curiam).  Generally, to prove a retaliation claim an inmate needs to show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action. *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).

Though the filing of a grievance generally constitutes protected conduct for purposes of stating a retaliation claim, Plaintiff has failed to allege facts demonstrating a causal connection between this grievance and the reassignment.  The individual who actually assigned Plaintiff to the top bunk—Mr. Gibbons—is not named as a Defendant in this action, *see* Compl. 1, 7, ECF No. 1, and Plaintiff has not alleged that Mr. Gibbons was named in his grievances or was even aware of them.  Plaintiff's conclusory retaliation

claims should therefore be dismissed without prejudice. *Thomas v. Lawrence*, 421 F. App'x 926, 929 (11th Cir. 2011) (per curiam) (affirming dismissal of retaliation claims where prisoner's grievance complained about only one staff member, and "complaint failed to allege any facts that would suggest that any of the other named defendants had a reason to retaliate against him for filing the grievance" against the staff member named in the grievance).

### 4.  Inadequate Medical Treatment Claims

Plaintiff also alleges that he was reassigned to a top bunk on the top range even though he had a medical profile that should have prevented such reassignment.  Plaintiff may thus be alleging that Defendants were deliberately indifferent to his serious medical needs and thereby violated his Eighth Amendment rights. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Id.*  A plaintiff must first "set forth evidence of an objectively serious medical need" and must also "prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.*  In other words, prison officials must both "know of and then disregard an excessive risk to the prisoner." *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam).  For purposes of this analysis, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted).

13

In addition to the fact that Plaintiff has not pleaded facts associating any named Defendant in this action with the reassignment, *see Douglas*, 535 F.3d at 1321-22, Plaintiff has also failed to plead facts sufficient to show that he suffered from a serious medical need. Indeed, Plaintiff never even explains what medical need required him to be housed on the lower range in a lower bunk. As such, Plaintiff has failed to state an Eighth Amendment claim based on Defendants' alleged deliberate indifference to his serious medical needs, and those claims are likewise subject to dismissal.

### 5. Access-to-Courts Claims

Plaintiff next avers that he has been denied sufficient access to the law library. This allegation may give rise to an access-to-courts claim. "Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment." *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 n. 12 (2002)). "To have standing to seek relief under this right, however, a plaintiff must show actual injury by 'demonstrat[ing] that a nonfrivolous legal claim ha[s] been frustrated or . . . impeded.'" *Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 797 (11th Cir. 2003) (alterations and omission in original) (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)). In other words, "[t]he injury requirement means that the plaintiff must have an underlying cause of action the vindication of which is prevented by the denial of access to the courts." *Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1271 (11th Cir. 2010).

In this case, Plaintiff has again failed to identify which named Defendants have violated his constitutional rights by restricting his access to the library.  His access-to-courts claims could be dismissed for this reason alone.  More importantly, however, Plaintiff has not identified any nonfrivolous legal claim that has been frustrated or impeded by the fact that Plaintiff has been offered only limited library access.  As such, any access-to-courts claims he seeks to raise in this action must be dismissed without prejudice.

### 6.  Claims Related to Plaintiff's Sentence

Plaintiff has also submitted copies of grievances he filed at the jail complaining about the calculation of his sentence.  Attach. 2 to Compl. 3, ECF No. 1-2.  It is unclear whether Plaintiff is intending to raise separate claims concerning his conviction and sentencing in this action.  To the extent that he does wish to raise these claims, a plaintiff is only permitted to set forth related claims in a single lawsuit.  A plaintiff may not join unrelated claims and various defendants in his complaint unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences *and* if any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20 (emphasis added).  "[A] claim arises out of the same transaction or occurrence if there is a logical relationship between the claims."  *Construction Aggregates, Ltd. v. Forest Commodities Corp.,* 147 F.3d 1334, 1337 n.6 (11th Cir. 1998).

In this case, Plaintiff has not pleaded facts sufficient to establish that his claims concerning his sentence are logically related to his claims concerning the conditions of his subsequent confinement.  Absent such facts, Plaintiff cannot show that his claims bear any logical relationship to one another for purposes of Rule 20.  Because joinder of these claims

is inappropriate, the Court may either sever these claims or dismiss them without prejudice. *See* Fed. R. Civ. P. 21; *see also DirecTV, Inc. v. Leto*, 467 F.3d 842, 844-45 (3d Cir. 2006).

The Court does not need to sever Plaintiff's claims that his sentence has been improperly calculated or imposed because such claims are likely barred under the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the United States Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. If it would, the prisoner "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* at 486-87. If the prisoner cannot show that his conviction or sentence has been invalidated in this manner, the prisoner's § 1983 claim is not cognizable. *Id.* at 487.

In this case, Plaintiff has claimed that he was improperly convicted or sentenced; a successful judgment on his behalf would thus necessarily imply the invalidity of that conviction or sentence. *See Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995) (holding that *Heck* barred damages claims based on prisoner's "contention that the defendants unconstitutionally conspired to convict him of crimes he did not commit" because judgment in favor of prisoner on those claims would necessarily undermine his conviction). Plaintiff's claims are therefore subject to dismissal unless he "can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487. Because Plaintiff has failed to allege any facts demonstrating that his conviction or sentence has in

fact been invalidated, his claims related to his conviction and imprisonment are *Heck*-barred and should be dismissed.  Furthermore, Plaintiff has already filed federal habeas corpus petitions challenged his Georgia convictions and sentencing.  *See, e.g., Ridley v. Ford*, 5:20-cv-00151-MTT-CHW (M.D. Ga. Apr. 21, 2020) (habeas petition challenging 2013 Georgia conviction); *Ridley v. Caldwell*, 1:20-cv-00203-LAG-TQL (M.D. Ga. Aug. 6, 2020) (habeas petition challenging 2019 Georgia probation revocation).  Plaintiff's claims concerning his conviction and sentence should therefore be dismissed without prejudice.

### III.  Conclusion

For the foregoing reasons, Plaintiff's motion for leave to submit grievance responses (ECF No. 6) is **GRANTED**, but it is **RECOMMENDED** that Plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 2) be **DENIED** and that his claims be **DISMISSED without prejudice** under 28 U.S.C. § 1915(g) and/or § 1915A.

### OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Marc T. Treadwell, Chief United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.  Any objection is limited in length to **TWENTY (20) PAGES**.  *See* M.D. Ga. L.R. 7.4.  The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.  Failure to object in accordance with the provisions of § 636(b)(1) waives the

right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.  *See* 11th Cir. R. 3-1.

      **SO ORDERED AND RECOMMENDED**, this 6th day of September, 2022.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge